# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 1, 2012

## STATE OF TENNESSEE v. RHONDA BROWN-MONTAGUE aka RHONDA BROWN

**Appeal from the Criminal Court for Shelby County**
**No. 0903289     James M. Lammey, Jr., Judge**

_____

**No. W2011-01433-CCA-R3-CD  - Filed December 5, 2012**

_____

The Defendant-Appellant, Rhonda Brown-Montague aka Rhonda Brown, pleaded guilty to theft of property over $60,000.00, a Class B felony, and was sentenced to ten years in the Tennessee Department of Correction.  In this appeal, the Appellant challenges her sentence as excessive and argues that the trial court erred in denying alternative sentencing.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

William L. Johnson (on appeal) and Arthur Horne, III (at trial), Memphis, Tennessee, for the Defendant-Appellant, Rhonda Brown-Montague aka Rhonda Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and William Bright, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In 2009, the Appellant was indicted, along with her husband and her mother, for stealing over $100,000 from her employer, Shelby Residential and Vocational Services (SRVS), a non-profit agency of United Way that provided financial assistance to people with slight to severe disabilities.[1]  On February 7, 2011, the Appellant entered a guilty plea to theft

_____
[1]Throughout the sentencing hearing, the trial court and defense counsel refer to a case immediately
(continued...)

of property over $60,000.00, a Class B felony. The terms and conditions of the guilty plea are unclear because we do not have the transcript of the guilty plea proceedings in this appeal. However, the judgment reflects that the Appellant was sentenced, as a Range I, standard offender, to a ten-year term of imprisonment with restitution set at $21,000.00. The following proof was adduced at the June 1, 2011 sentencing hearing.

Ms. Jeffrie Brutton, the Executive Director of SRVS, testified that her organization received its funding primarily from the State of Tennessee and private donors. Ms. Brutton testified that the Appellant was employed as the family support program coordinator from November 2005 to January 2008. In this role, the Appellant was responsible for "filling out" and "overseeing" all applications for financial support and submitting them to the local council for approval. The Appellant also had the authority to approve funds without the approval of the council, and she determined who became eligible for family support program services and the amount of funding they would receive. SRVS provided services to persons in the order in which they applied and maintained a "waiting list" for persons they were unable to immediately assist. The Appellant controlled the waiting list. Ms. Brutton explained that the waiting list was essential because SRVS had limited resources to distribute. SRVS reduced the maximum amount of $4,000.00, which was normally allocated to an applicant, to $2,500.00 in order to service more families. Ms. Brutton testified that, during the Appellant's employment, there were between 1000 to 1500 persons on the waiting list, and the typical wait for services was four or five years.

At some point, the Appellant's supervisor discovered that the Appellant's daughter "was on the program under a fake name," and SRVS conducted an investigation which reported a total loss to the organization of $154,000.00. Although insurance paid $118,000.00, SRVS had to "make up the difference" and pay the State of Tennessee $154,000.00. Ms. Brutton said that the Appellant's actions ruined SRVS' reputation. Ms. Brutton estimated forty families did not receive services from the family support program because of the Appellant's actions. She acknowledged that she received a letter of apology from the Appellant prior to the sentencing hearing.

The Appellant testified and acknowledged that in January 2006, she created an application for her daughter under a fictitious name and provided the maximum funding of $4,000.00. Later that year, the Appellant also completed an application for her son, falsely claiming he was paraplegic. The Appellant provided her son with an additional $4,000.00

---

[1](...continued)
preceding the Appellant's sentencing hearing. We presume, from the indictment and the context of the hearing, that the parties are referring to the co-defendants, Arnett Montague and Mary Brown, who are charged in the indictment.

for "[h]ome modification, specialized equipment, and respite care." The Appellant conceded that she created fictitious people for whom she completed applications and provided funding. She also provided, through the program, an exercise bike and a stair lift for family members. The Appellant acknowledged that she falsely enrolled fifteen to twenty family members and friends who were not entitled to the services of the family support program. Specifically, the Appellant enrolled co-defendant, Mary Brown, her mother, and Corey Hubbard, of no relation, into the program. The State advised the trial court that they had entered a nolle prosequi as to Mary Brown's case and that Corey Hubbard had been placed on Pretrial Diversion.

In response to applicants' inquiries regarding the status of their applications, the Appellant told them they were on the waiting list. The Appellant agreed that she denied families that had been on the waiting list for at least five years the services that they needed. She acknowledged that some of the applicants were quadriplegic and blind. The Appellant conceded that she enrolled fictitious or false applicants into the SRVS program for over a year.

The Appellant explained that she stole the money because she and her husband were "having a lot of financial problems." She conceded "it wasn't a great decision that I made, but we saw an opportunity to try to get ahead, and we took that, and it was not the right decision to make; but at the time, we did it." The Appellant testified:

> This has been a very humbling experience for myself and my family. I'm extremely sorry for the families that I've hurt for the funds that I've taken away from the families. I would like to be given a chance to pay that money back and to be allowed to stay at home with my children so that I can be there for them in their growth. And I would just like to have another chance to prove myself.

The Appellant had intended to "get up a lump sum of money to start paying this money back." However, she had not done so because she apparently intended to use student loan money which had been delayed. The Appellant testified that since her termination at SRVS, she had been working at a salon as a licensed hair stylist and netted "about twenty-five hundred dollars a month." She acknowledged that she could pay $200.00 per month towards restitution, as noted in the presentence report.

Ms. Sandy Williams, a fellow church member of the Appellant, testified that the Appellant was active in the lives of her children, church, and school. Five letters of recommendation were also offered into evidence. The letters noted the Appellant's leadership roles in her church and children's school, and that the Appellant was a good

mother, worker, and friend. The Appellant also wrote a letter to the trial court in support of an alternative sentence. The letter stressed the Appellant's desire to be with her children, then ages six and eleven.

Kara Hayden of the Tennessee Bureau of Investigation testified regarding her investigation of the Appellant's actions at SRVS. Agent Hayden reviewed documents submitted by SRVS and compiled a report that was admitted into evidence at the sentencing hearing. The report showed that the Appellant funded $11,900.00 to her daughter with a fictitious name and $12,000.00 to her son whom she falsely named and characterized as "paraplegic." The Appellant also created two fictitious people for whom she received a total of $15,651.00. She funded $8,000.00 to her mother, $8,000.00 to a co-worker, and $490.00 to an unknown individual with no proof of disability. She also provided funding for the following relatives whom Agent Hayden testified were non-qualifying: $5,835.98 for her stepmother; $2,000.00 for the mother of her stepmother; $7,305.00 for her grandmother; $6,525.00 for an aunt; and $5,078.00 for the aunt of her husband. The Appellant issued the first check to her daughter approximately two months after being hired as coordinator for the program and issued the final check to her son a month prior to her termination. The report showed that the Appellant stole $82,784.98 from SRVS.

The trial court sentenced the Appellant to ten years in the Department of Correction. The Appellant then filed this timely appeal.

## **ANALYSIS**

As an initial matter, the State argues that this Court should presume that the sentence imposed by the trial court is proper because the Appellant failed to provide an adequate record on appeal. To date, the Appellant has not filed a reply brief or moved to supplement the record.

As noted above, the record does not contain a transcript of the plea hearing or a transcript of the sentencing hearing of the Appellant's husband, which was repeatedly referred to by the trial court. We are therefore unable to see the stipulated facts referred to by the State during the sentencing hearing. It is the Appellant's burden to include all transcripts "necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b); see State v. Ballard, 855 S.W.2d 557, 561 (Tenn. 1993) (holding failure to include transcript precludes appellate review); State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999) (holding trial court's ruling presumed correct in the absence of an adequate record on appeal) (citation omitted). The trial court's ruling can be presumed correct on this ground alone. Keen, 996 S.W.2d at 844 (Tenn. Crim. App. 1999). Nevertheless, we conclude that the record is

sufficient for our review, and we will address the issues presented on appeal. See State v. Angela Colley, E2011-00250-CCA-R3-CD, 2011 WL 6016885 (Tenn. Crim. App. Dec. 5, 2011); State v. Anna M. Steward, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659, at *2 (Tenn. Crim. App. Sept. 19, 2011).

The Appellant contends that the trial court imposed an excessive sentence. She argues that the record does not support the enhancement factors relied upon by the trial court. The State responds that "defendant's complaint fails to acknowledge the impact of changes in Tennessee's sentencing procedure that occurred in 2005," and that the court properly applied three enhancement factors and no mitigating factors. We agree with the State.

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b) (2006). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d) (2006), Sentencing Comm'n Comments.

Because the 2005 amendments to the sentencing act gave trial courts broad discretion in sentencing, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, — S.W.3d — , 2012 WL 4380564, at *16 (Tenn. Sept. 26, 2012). Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not

invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. at *17. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id.

There was no dispute that the Appellant qualified as a Range I, standard offender. She was convicted of theft of property over $60,000.00, a Class B felony, T.C.A. § 39-14-105(5) (2006), and subject to a sentence of "not less than eight (8) nor more than twelve (12) years." T.C.A. § 40-35-112(a)(2)(2006). The trial court imposed a sentence of ten years.

The Appellant contends that her ten-year sentence is excessive because the trial court erred in applying two of the three enhancement factors and erred in failing to apply any mitigating factors. The record shows that the trial court fully considered the purposes and principles of the Sentencing Act. Accordingly, the trial court did not abuse its discretion in imposing a ten-year sentence in this case. The Appellant is not entitled to relief.

The Appellant further challenges the trial court's denial of probation, which she asserts was inconsistent with the purposes of the Sentencing Act of 1989. The State responds that the record supports the trial court's decision. We agree with the State.

The Tennessee Supreme Court recently held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including questions related to probation or any other alternative sentence." State v. Caudle, — S.W.3d — , 2012 WL ------- , at *--- (Tenn. Nov. 27, 2012). A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. See T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. T.C.A. § 40-35-303(b) (2006). No criminal defendant is automatically entitled to probation as a matter of law. Id., Sentencing Commission Comments; see State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4) (2006). "The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

In deciding whether to order confinement, the trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; (2) confinement is necessary to avoid depreciating the seriousness of the offense, or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses; or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. T.C.A. § 40-35-103(1)(A)-(C) (2006). The trial court should also consider the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 (2006). T.C.A. § 40-35-210(b)(5) (2006); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Finally, the sentence imposed should be the least severe measure necessary to achieve its purpose. T.C.A. § 40-35-103(4) (2006).

Because the Appellant's conviction is a Class B felony, she is not a "favorable candidate for alternative sentencing options." T. C. A. § 40-35-102(6)(2006). However, her sentence of ten years makes her eligible for probation. Id. § 40-35-303(a).

The trial court considered all relevant factors and concluded that the Appellant presented no potential for rehabilitation and would not make restitution if given probation. The court also determined that full or part probation would depreciate the seriousness of the offense and would not serve the ends of justice or benefit either the public or the Appellant:

> The probation factors - the nature and circumstances of the criminal conduct involved. Now, this is even worse than her husband - her husband

was led into this by her. He willingly went along with this, but it was she who caused all of this to happen, and it started happening almost as soon as she went to work for these people. . . . [T]his is absolutely atrocious. I can't think of any circumstances that are any worse than this. The circumstances of this criminal conduct is such that, you know, she completely ruined her family - she ruined her reputation - she ruined her husband - she ruined her friends - her mother–she got them all involved in this - money for everybody - people with fictitious names - forged documents. Everything that she did was a fraud here. So, to say that she has a potential for rehabilitation, in my opinion, is a joke.

> I think full or part probation would unduly depreciate the seriousness of this offense. . . . I think this organization will never see any of this money if she were ordered to pay it back.

Here, the trial court determined that confinement was necessary based exclusively upon the need to avoid depreciating the seriousness of the offense. The Appellant acknowledges that probation may be denied based solely upon the circumstances surrounding the offense. State v. Hartley, 818 S.W.2d 370, 374 (Tenn. Crim. App.1991). However, she contends that this offense is not "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or an exaggerated degree" and that "the nature of the offense does not outweigh the factors favoring probation." Id. We disagree.

First, the record shows that the trial court properly considered the sentencing principles in Tennessee Code Annotated section 40-35-103 before denying alternative sentencing in this case. The trial court considered the Appellant's presentence report, her lack of criminal history, proof of her good character as a mother, friend, and church member, and her expression of remorse. However, the record also showed that the Appellant stole at least $80,000 dollars from a non-profit organization whose sole purpose was to provide financial assistance to severely disabled individuals. In her role as the coordinator of family support services, she was charged with overseeing the distribution of funds to applicants to the program. Consequently, as a result of the Appellant's actions, at least forty qualified applicant families were denied services during the Appellant's tenure with the organization. Additionally, the record shows the Appellant's theft was systematic and complex. Over a period of three years, the Appellant forged various documents, created fictitious individuals, and involved numerous other individuals in the offense, including the Appellant's mother and husband. Finally, the only motive the Appellant provided to the trial court for the enormity of her theft was that she was experiencing some "financial problems" given her $60,000 combined annual income. Based on this record, we are unable to conclude that the trial court erred in determining that these factors outweighed the mitigating factors offered by the Appellant. The trial court clearly believed, and we agree, that the Appellant's theft

was reprehensible, offensive, or otherwise of an excessive or exaggerated degree. See State v. Trotter, 201 S.W.3d 651, 655 (Tenn. 2006) (upholding sentence of confinement based on the circumstances surrounding the theft of nearly $500,000 by the defendants from one of the defendant's employers as so "reprehensible, offensive or otherwise of an excessive or exaggerated degree" that it outweighed the mitigating evidence of the defendants' good character and remorse)). Accordingly, we conclude that the trial court properly determined that confinement was necessary to avoid depreciating the seriousness of this offense, and the sentence is therefore affirmed.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE